UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| GLEN ELLYN PHARMACY, INC., ) <br> on behalf of plaintiff and ) <br> the class members defined herein, ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> AKRON GENERICS, LLC ) <br> and JOHN DOES 1-10, ) <br> ) <br> Defendants. ) | No. 1:20 CV 02177 <br> Hon. Marvin E. Aspen |

**MEMORANDUM OPINION & ORDER**

MARVIN E. ASPEN, District Judge:

Plaintiff Glen Ellyn Pharmacy, Inc. ("Glen Ellyn") alleges, on behalf of itself and a putative class, that Defendant Akron Generics, LLC ("Akron") and unknown "John Does" faxed them unsolicited advertisements in violation of the Telephone Consumer Protection Act, 47 U.S.C. § 227, the Illinois Consumer Fraud Act 815 ILCS 505/2, New York General Business Law § 396-aa, and the common law torts of conversion and trespass to chattels. (First Amended Complaint ("FAC") (Dkt. No. 19) ¶ 1.)

Presently before us is Akron's Rule 12(b)(1) and (6) motion to dismiss Glen Ellyn's FAC. (Motion to Dismiss ("MTD") (Dkt. No. 20) at 1.) For the reasons set forth below, we grant Akron's motion in part and deny it in part.

**BACKGROUND**

The following facts are taken from Plaintiffs' FAC and are deemed to be true for the purposes of this motion. *See Bell v. City of Chi.*, 835 F.3d 736, 738 (7th Cir. 2016); *see also Tamayo v. Blagojevich*, 526 F.3d 1074, 1081 (7th Cir. 2008).

Glen Ellyn is an Illinois corporation with offices in Glen Ellyn, Illinois. (FAC ¶ 3.) Akron is a New York corporation with principal offices located at 47 Mall Drive, Suite 1, Commack, New York 11725. (*Id.* ¶ 4.) Akron's registered agent is The Limited Liability Company, located at 11901 Jamaica Ave., Richmond Hill, New York 11418. (*Id.*)

On February 13, 2020, Glen Ellyn received a one-page, unsolicited fax, providing certain contact information for Akron and announcing the availability of, and pricing for, certain products marketed by Akron. (*Id.* ¶ 9.) The fax at issue was attached to Glen Ellyn's FAC and is copied below:

From: Akron Generics  Fax: 16313868708  To:  Fax: (630) 469-8590  Page: 1 of 1  02/13/2020 3:08 PM

**ACRx Akron Generics**
47 MALL DR. UNIT 1 & 2
COMMACK, NY 11725
Phone: 1-631-268-5528  Email: ben@akrongenerics.com
Fax: 1-631-386-8708, NY Reg. No.: 035617    Sales Rep: BEN

**DAILY SPECIALS**

PHARMACY NAME: _____

| DESCRIPTION | SIZE | PRICE | QTY | DESCRIPTION | SIZE | PRICE | QTY |
|---|---|---|---|---|---|---|---|
| AMOXICILLIN/CLAV 500MG/125 MG TAB | 20 | $3.75 | | ARIPIPRAZOLE 15 MG | 30 | $0.99 | |
| ARIPIPRAZOLE 20 MG TAB | 30 CT | $0.99 | | ARIPIPRAZOLE 30 MG TAB | 30 CT | $0.99 | |
| CLINDAMYCIN PHOSPHATE 1% SOLUTION | 60 ML | $6.99 | | CYANOCOBALAMIN 1000MCG/ML INJECTION | 25X1 ML | $49.99 | |
| DIGOXIN 0.25 MG | 100 | $6.99 | | DILTIAZEM 120 MG TABLET | 100 CT | $16.99 | |
| DILTIAZEM 90 MG TABLET | 100 CT | $13.99 | | DILTIAZEM CD 180 MG CAPSULE | 90 CT | $13.49 | |
| DILTIAZEM CD 240 MG CAPSULE | 90 CT | $16.99 | | DIVALPROEX SODIUM ER 500 MG | 500 | $79.99 | |
| ESOMEPRAZOLE 40 MG CAPS 30 | 30 CT | $3.99 | | ESOMEPRAZOLE MAG 40 MG DR CAPS 90 | 90 | $9.99 | |
| GABAPENTIN 100 MG CAPS | 500 CT | $9.99 | | GABAPENTIN 600 MG CAP | 500 CT | $29.99 | |
| GABAPENTIN 800 MG CAP | 500 CT | $33.99 | | GLIMEPIRIDE 2 MG | 500 | $11.99 | |
| GLIMEPIRIDE 4 MG TABS | 500 CT | $15.99 | | GLIPIZIDE 10 MG | 1000 | $19.99 | |
| HALOPERIDOL 20 MG | 100 | $99.99 | | KETOCONAZOLE CREAM 2% | 60 GM | $18.99 | |
| LEVOTHYROXINE 125 MCG TAB | 100 CT | $7.49 | | LEVOTHYROXINE 25 MCG TAB | 100 CT | $7.99 | |
| LIDOCAINE 5% TOPICAL PATCH | 30 CT | $49.99 | | LIDOCAINE/PRILOCAINE 2.52.5 % CREAM | 30 | $0.99 | |
| METRONIDAZOLE 0.75% VAG. GEL | 70 GM | $31.99 | | OLMESARTAN MED TAB 20 MG 30 CT | 30 CT | $3.99 | |
| OSELTAMIVIR PHOSPHATE CAPS 75 MG 10 CT | 10 CT | $6.49 | | SOLIFENACIN SUCC 10 MG TAB | 30 CT | $3.99 | |

IF YOU WOULD LIKE TO STOP RECEIVING OUR FAX PLEASE FILL OUT THE FOLLOWING AND FAX BACK TO 631-386-8708. THANK YOU.

PHARMACY NAME: _____  FAX NUMBER: _____

(FAC Ex. A.) "On information and belief" Glen Ellyn asserts that Akron "sent or caused [the fax] to be sent from New York." (*Id*. ¶ 9.)

Before receiving this fax, Glen Ellyn had no relationship with Akron, and Glen Ellyn had not authorized Akron to send Glen Ellyn fax advertisements. (*Id*. ¶ 15.) Nor did the fax contain a proper "opt out" notice. (*Id*. ¶ 17.)

Glen Ellyn believes that the fax that it received was one of many unsolicited advertisements that Akron sent to individuals in Illinois. (*Id*. ¶ 18.) Glen Ellyn alleges that it and other putative class members "suffered damages as a result of receipt of the unsolicited faxes, in the form of paper and ink or toner consumed as a result." (*Id*. ¶ 23.) Additionally, Glen Ellyn claims that its "statutory right of privacy was invaded." (*Id*.)

## LEGAL STANDARD

### A. Motion to Dismiss for Lack of Standing

Akron argues that we should dismiss Glen Ellyn's suit for lack of standing under Federal Rule of Civil Procedure 12(b)(1). (MTD at 11–15.) The party who invokes federal jurisdiction bears the burden of demonstrating standing. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992); *see also Atlas v. Village of Glencoe*, No. 19 C 3962, 2019 WL 6117579, at *2 (N.D. Ill. Nov. 18, 2019).

Akron's challenge is a facial one. In other words, even if the allegations in Glen Ellyn's FAC are taken as true, they would still not establish standing. *Apex Digital, Inc. v. Sears, Roebuck & Co.*, 572 F.3d 440, 443–44 (7th Cir. 2009). "Facial challenges require only that the Court look to the [operative complaint] to see if Plaintiff has sufficiently alleged a basis of subject matter jurisdiction." *Glen Ellyn Pharmacy, Inc. v. Kloudscript, Inc.*, Case No. 19 CV

3

2829, 2019 WL 6467319, at *1 (N.D. Ill. Dec. 2, 2019). Allegations in the operative complaint are taken as true when deciding motions of this type. *Id.*

### B. Motion to Dismiss for Failure to State a Claim

Akron's remaining challenges to Glen Ellyn's FAC fall under Federal Rule of Civil Procedure 12(b)(6). (MTD at 6–11.) A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) is meant to test the sufficiency of the complaint, not to decide the merits of the case. *McReynolds v. Merrill Lynch & Co.*, 694 F.3d 873, 878 (7th Cir. 2012); *Gibson v. City of Chi.*, 910 F.2d 1510, 1520 (7th Cir. 1990). In evaluating a motion to dismiss, courts "construe the complaint in the light most favorable to the plaintiff, accepting as true all well-pleaded facts alleged, and drawing all possible inferences in her favor." *Tamayo*, 526 F.3d at 1081. Courts may grant motions to dismiss under Rule 12(b)(6) only if a complaint lacks sufficient facts "to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 1949 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 1974 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678, 129 S. Ct. at 1949. Although a facially plausible complaint need not give "detailed factual allegations," it must allege facts sufficient "to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555, 127 S. Ct. at 1964–65. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678, 129 S. Ct. at 1949. These requirements ensure that the defendant receives "fair notice of what the . . . claim is and the grounds upon which it rests." *Twombly*, 550 U.S. at 555, 127 S. Ct. at 1964.

**ANALYSIS**

I.   **TCPA and Standing**

Akron argues that Glen Ellyn cannot maintain its TCPA claim because Glen Ellyn lacks the requisite standing. (MTD at 11–15.) "To establish standing, a plaintiff must allege an injury in fact that is traceable to the defendant's conduct and redressable by a favorable judicial decision." *Kloudscript*, 2019 WL 6467319, at *2 (citing *Lujan*, 504 U.S. at 560–61). These requirements stem from Article III of the Constitution, which restricts federal courts' authority to the resolution of "Cases" or "Controversies." *Casillas v. Madison Ave. Assocs., Inc.*, 926 F.3d 329, 333 (7th Cir. 2019).

According to Akron, Glen Ellyn cannot satisfy the "injury in fact" element of the standing analysis because Glen Ellyn "has no actual or concrete injury." (MTD at 11–12.) In response, Glen Ellyn asserts that it *has* alleged that it suffered actual harm as a result of Akron's conduct—specifically, that it was deprived of the paper, ink, and toner used to print Akron's fax, and Akron invaded its statutory right of privacy. (Plaintiff's Response ("Opp.") (Dkt. No. 23) at 2.) Glen Ellyn is correct.

An "injury in fact" is "an invasion of a legally protected interest which is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical." *Lujan*, 504 U.S. at 560 (internal citations and quotations omitted). Article III standing "requires a concrete injury even in the context of a statutory violation." *Spokeo, Inc. v. Robins*, 136 S.Ct. 1540, 1549 (2016).

On this issue, a recent Seventh Circuit Court of Appeals decision controls. In *Craftwood II, Inc. v. Generac Power Sys., Inc.*, 920 F.3d 479 (7th Cir. 2019), Plaintiffs alleged that they had been harmed by unwanted faxes because printing the faxes used paper and toner, and their

5

employees' attention was diverted from profitable activities to reading the faxes. *Id.* at 481. The Seventh Circuit Court of Appeals concluded that even though the alleged harms "may have been slight," they were concrete injuries caused by the defendant's conduct that could be redressed by an award of damages. *Id.* The Seventh Circuit further observed, "We have resolved dozens of fax-ad suits on the merits without suspecting that we were violating Article III of the Constitution. This suit is no more constitutionally suspect than they." *Id.*

Such a result is also consistent with the approach taken by other courts within this district. In *Kloudscript, supra*, another court concluded that plaintiff had Article III standing to pursue a TCPA claim where plaintiff had alleged that defendant's "unsolicited faxes deprived [it] of its ink, toner, the user of its fax machine, and the time it spent identifying the source and purpose of the fax." *Kloudscript*, 2019 WL 6467319, at *2. The court found that "the cost of printing the faxes and the diversion of employee time necessary to read the faxes are concrete losses." *Id.*

The instant case is analogous to those described above. Similar to those cases, Glen Ellyn alleges that, as a result of receiving an unsolicited fax from Akron, it was deprived of paper, ink, and toner, and it suffered an invasion of its statutory right of privacy. (FAC ¶ 23.) These are concrete injuries that can be remedied with an award of damages. *Craftwood II*, 920 F.3d at 481. Accordingly, Akron's standing argument fails, and Akron's motion to dismiss is denied with regard to Glen Ellyn's TCPA claim.

## II.     Trespass to Chattels

"Trespass to chattels involves an injury to or interference with possession of personal property, with or without physical force." *Kloudscript*, 2019 WL 6467319, at *3 (internal citations omitted). Trespass to chattels can occur in one of two ways: "intentionally (a)

6

dispossessing another of the chattel, or (b) using or intermeddling with a chattel in the posession of another." *Id.* (internal citations omitted).

Akron contends that Glen Ellyn cannot maintain a claim for trespass to chattels because, taking the facts alleged in Glen Ellyn's FAC as true: (1) there has been little or no damage to Glen Ellyn's property, and (2) Glen Ellyn was not deprived of its property for a substantial amount of time. (MTD at 6–7.)

Glen Ellyn counters that the doctrine of *de minimis non curat lex*, or the doctrine that the law does not concern itself with trifles, does not apply where a defendant has intentionally infringed upon a plaintiff's property rights. (Opp. at 7.)

Akron has the better argument. The court's opinion in *Orrington v. Scion Dental, Inc.*, Case No. 17-CV-00884, 2017 WL 5569741 (N.D. Ill. Nov. 20, 2017), is instructive on this point. In that case, another court within this district dismissed a trespass to chattels claim where plaintiff alleged that the defendant's unsolicited fax had interfered with plaintiff's use of its fax machine. *Id.* at *8. The court noted, "[a]s an initial matter," that plaintiff's "conclusory allegation that it 'suffered damages'" was "insufficient" because plaintiff had "not alleged 'that its fax machine was harmed in any way or the machine's quality, condition, or value diminished as a result of receiving this fax.'" *Id.* (citing *Able Home Health, LLC v. Onsite Healthcare, Inc., S.C.*, Case No. 16-cv-8219, 2017 WL 2152429, at *7 (N.D. Ill. May 17, 2017)). The court continued that even if it "assumed the existence of some damages … the 'fleeting interference' caused by the transmission of an unsolicited fax" would fail under the *de minimis* doctrine. *Orrington*, 2017 WL 5569741, at *8. According to the court, "any purported damage here would be nothing 'more than a few pennies;'" and thus, plaintiff's allegations could not support a trespass to chattels claim. *Id.* (citing *Able Home*, 2017 WL 2152429, at *7).

7

The deficiencies in Glen Ellyn's FAC are similar to those highlighted above. Like the plaintiff in *Orrington*, Glen Ellyn asserts, in support of its trespass to chattels claim, that Akron's unsolicited faxes interfered with Akron and fellow class members' "use of the receiving equipment" and that Glen Ellyn "and each class member suffered damages as a result of receipt of the unsolicited faxes." (FAC ¶¶ 79, 81.) These allegations, like those in *Orrington*, are conclusory and insufficient. As in *Orrington*, Glen Ellyn has "not alleged 'that its fax machine was harmed in any way or the machine's quality, condition, or value diminished as a result of receiving this fax.'" *Orrington*, 2017 WL 5569741, at *8 (citing *Able Home*, 2017 WL 2152429, at * 7). Even if we were to assume the existence of damages, "the 'fleeting interference' caused by the transmission of an unsolicited fax" would fail under the *de minimis* doctrine. *Orrington*, 2017 WL 5569741, at *8.

Accordingly, the *de minimis* doctrine bars Glen Ellyn's trespass to chattels claim.

### III.     Conversion

The parties raise similar arguments regarding Glen Ellyn's claim for conversion. To bring a claim for conversion under Illinois law, a plaintiff must allege: "(1) he has a right to the property; (2) he has an absolute and unconditional right to the immediate possession of the property; (3) he made a demand for possession; and (4) the defendant wrongfully and without authorization assumed control, dominion, or ownership over the property." *Cirrincione v. Johnson*, 703 N.E. 2d 67, 70 (Ill. 1998) (internal citation omitted). The difference between the torts of conversion and trespass to chattels is "a matter of degree." *Zissu v. IH2 Prop. Illinois, L.P.*, 157 F. Supp. 3d 797, 803 (N.D. Ill. 2016).

Akron argues that Glen Ellyn's claim for conversion warrants dismissal because: (1) Glen Ellyn has not alleged that it made a demand for control, and (2) the *de minimis* doctrine bars

8

Glen Ellyn' claim. (MTD at 8.) Glen Ellyn counters that: (1) it did not need to make a demand for control because the unsolicited fax was unlawful in itself under 720 ILCS 5/26-3, and (2) the *de minimis* doctrine does not apply because Illinois courts have recognized that "a piece of paper may be converted," and nominal damages may be awarded. (Opp. at 4–5.)

Glen Ellyn correctly states that it need not have made a demand for control in order to maintain its claim for conversion. Courts in this district have repeatedly concluded that a demand for control of converted chattel need not be made where the demand would be futile. *See, e.g., Able Home*, 2017 WL 2152429, at *5; *Brodsky v. HumanaDental Ins. Co.*, No. 10-C-3233, 2011 WL 529302, at *6 (N.D. Ill. Feb. 8, 2011). A demand would be futile if the defendant has so altered the plaintiff's property that it could not be returned in an unaltered state. *Able Home*, 2017 WL 2152429, at *5 (internal citations omitted). Such is the case here. Once Glen Ellyn's toner, ink, and paper had been used to print Akron's fax advertisement, there would be no way for Akron to return those items to Glen Ellyn in their original state. Thus, there would be no point to demanding control of those items. *Id.*

Akron's second argument concerning the *de minimis* doctrine is more persuasive. As other courts in this district have observed, a "conversion claim that is otherwise adequately pled must fail if the conversion resulted in damages that are 'minuscule to the point of nonexistent.'" *Kloudscript*, 2019 WL 6467319, at *3 (quoting *Brandt v. Bd. of Educ. of City of Chi.*, 480 F.3d 460, 465 (7th Cir. 2007)). Courts may award nominal damages for intentionally tortious conduct, but "a conversion claim is not actionable if the damages are 'negligible from the onset of the lawsuit.'" *Kloudscript*, 2019 WL 6467319, at *3 (quoting *Savanna Group, Inc. v. Truan*, No. 10 C 7995, 2011 WL 703622, at *3 (N.D. Ill. Feb. 22, 2011).

9

Most courts in this district considering conversion claims in junk fax cases dismiss those claims pursuant to the *de minimis* doctrine. *See, e.g.*, *Kloudscript*, 2019 WL 6467319, at *4 (Leinenweber, J.) (dismissing a conversion claim where plaintiff's damages amounted to "a few pennies per page of unsolicited fax received"); *Orrington*, 2017 WL 5569741, at *7–8 (St. Eve, J.) (concluding that "any damages from the ink, toner, and paper used in connection with a single, one-page fax are *de minimis* and do not support a conversion claim"); *Able Home*, 2017 WL 2152429, at * 6 (Dow Jr., J) (dismissing a conversion claim since "[a]ny damages from the ink, toner and paper in connection with [a] two-page fax are plainly *de minimis*"); *G.M. Sign, Inc. v. Elm Street Chiropractic, LTD.*, 871 F. Supp. 2d 763, 768–69 (N.D. Ill. Nov. 15, 2012) (Kendall, J.) (agreeing that the "loss of a single sheet of paper and a few drops of ink is of insufficient gravity to elicit nominal damages" and maintain a claim for conversion); *Garrett v. Rangle Dental Laboratory*, No. 10 C 1315, 2010 WL 3034709, at *1 (N.D. Ill. Aug. 3, 2010) (Bucklo, J.) (writing that plaintiff's "conversion claim also fails because the alleged loss is *de minimis* and can be remedied by his TCPA claim"); *Paldo Sign and Display Co. v. Topsail Sportswear, Inc.*, No. 08 C 5959, 2010 WL 276701, at *3 (N.D. Ill. Jan. 15, 2010) (Andersen, J.) (dismissing a conversion claim where "the most [plaintiff could] hope to gain from a favorable judgment …[was] a few pennies").

The same result is appropriate here. Any damages that Glen Ellyn suffered from the receipt of one, single-page fax "are minuscule to the point of nonexistent." *Brandt*, 480 F.3d at 465. As other courts have observed, "'the most'" that a plaintiff like Glen Ellyn "'can hope to gain from a favorable judgment on'" their conversion claim "'is a few pennies. This fact was true the moment the fax was printed, and has not changed since that point in time.'" *Able Home*, 2017 WL 2152429, at *6 (quoting *Paldo Sign*, 2010 WL 276701, at *3).

Cases cited by Glen Ellyn to the contrary, for the proposition that conversion actions can be maintained for the conversion of paper, are all outdated, inapposite, or some combination of both. *See, e.g., Olds v. Chi. Open Bd. of Trade*, 33 Ill. App. 445 (1st Dist. Ill. App. Ct. 1889) (131-year-old opinion considering an action for conversion of a certificate of membership in a board of trade, which had value by virtue of the right represented by the certificate, as opposed to the piece of paper itself); *Brewster v. Van Liew*, 8 N.E. 842 (Ill. 1886) (134-year-old opinion concerning the conversion of a stock certificate, which derived its value from the rights it conveyed, as opposed to the paper itself); *Thyroff v. Nationwide Mut. Ins. Co.*, 8 N.Y.3d 283 (N.Y. 2007) (case answering the question of whether a claim for conversion of electronic data is cognizable under New York, not Illinois, law). Many of these cases do not stand for the proposition that a conversion action can be maintained for the mere conversion of a piece of paper; but rather, that a conversion action can be maintained for the conversion of a piece of paper containing valuable information. *See, e.g., Illinois Minerals Co. v. McCarty,* 48 N.E. 2d 424 (4th Dist. Ill. App. Ct. 1943) (paper containing customer list and other proprietary information); *Olds*, 33 Ill. App. 445 (paper granting trading rights); *Brewster*, 8 N.E. 842 (paper proving stock ownership). Such is not the case here.

The remaining cases appear to conflate the concepts of nominal and *de minimis* damages. Nominal damages maybe awarded where "interference is severe enough" to warrant damages, "even if actual damages are absent." *Old Town Pizza of Lombard, Inc. v. Corfu-Tasty Gyro's Inc.*, No. 11-cv-6959, 2012 WL 638765, at * 3 (N.D. Ill. Feb. 23, 2012). Such might be the case if a stock certificate, jewelry, or other valuable item were converted and then returned to a plaintiff while litigation was pending. *See Stonecrafters, Inc. v. Foxfire Printing & Packaging, Inc.*, 633 F. Supp. 2d 610, 614–15 (N.D. Ill. July 8, 2009). When the items were missing, the

11

damages were potentially significant; when they were returned, the only damages that could be obtained were nominal. *Id*. Our case is different. In our case, there is no reason to believe that Glen Ellyn's damages are, have been, or ever will be significant because the case only pertains to a single unwanted, one-page fax worth no more than a "few pennies" at best. *See Paldo Sign*, 2010 WL 276701, at *3.

Accordingly, Glen Ellyn's claim for conversion is barred by the *de minimis* doctrine and is dismissed.

### IV. Illinois Consumer Fraud Act

Akron also contends that Glen Ellyn's claim under the Illinois Consumer Fraud Act, 815 ILCS 505/2, ("ICFA") merits dismissal. The ICFA bars:

> [u]nfair methods of competition and unfair or deceptive acts or practices, including but not limited to the use or employment of any deception fraud, false pretense, false promise, misrepresentation or the concealment, suppression or omission of any material fact, with intent that others rely upon the concealment, suppression or omission of each material fact. . . .

815 ILCS 505/2, § 2. The ICFA "is to be liberally construed to effectuate its purpose." *Robinson v. Toyota Motor Credit Corp.*, 775 N.E.2d 951, 960 (Ill. 2002). According to Akron, Glen Ellyn's FAC "does not allege any deception, fraud, misrepresentations, or other actionable offenses specified by the Fraud Act," much less meet the heightened pleading standard required for fraud claims. (MTD at 9–10.)[1]

---

[1] Akron also argues that Glen Ellyn's citation to Illinois criminal statute, 720 ILCS 5/26-3(b), is inapposite because Akron has not been charged with, or convicted of, any crime in Illinois. (MTD at 9.) We assume that Glen Ellyn cites to the Illinois criminal statute to bolster its argument that Akron's conduct was "unfair." *See Brodsky*, 2011 WL 529302, at *9 (noting that courts applying the ICFA "frequently accept that the transmission of [unsolicited fax advertisements], which could constitute violations of both the TCPA and the Illinois Criminal Code, *see* 720 ILCS 5/26-3(b), does offend public policy") (internal citations omitted). As discussed in greater detail below, the first element of the test for determining whether conduct is "unfair" under the ICFA is whether it violates public policy. The fact that conduct is barred by

12

Glen Ellyn responds that the heightened pleading standard is not applicable here because it has alleged that Akron committed an unfair, as opposed to deceptive, practice under the ICFA. (Opp. at 7.) Glen Ellyn is correct regarding the applicable pleading standard. The Seventh Circuit has concluded that plaintiffs challenging unfair practices under the ICFA need not meet a heightened pleading standard. *See Windy City Metal Fabricators & Supply, Inc. v. CIT Tech. Fin. Servs.*, 536 F.3d 663, 670 (7th Cir. 2008). The question becomes whether Glen Ellyn has adequately alleged that Akron engaged in an unfair practice under the normal pleading standard.

To ascertain whether a defendant's actions constitute an unfair practice under the ICFA, Illinois courts consider whether the following factors are present: "(1) whether the practice offends public policy; (2) whether it is immoral, unethical, oppressive, or unscrupulous; [and] (3) whether it causes substantial injury to consumers." *Robinson*, 775 N.E.2d at 960. The alleged practice need not satisfy all three factors to be unfair; "an act may constitute an unfair practice based on the degree to which it meets one or more of the factors." *Kloudscript*, 2019 WL 6467319, at *4.

There is widespread agreement that the practice of sending unsolicited fax advertisements to unwilling recipients offends public policy. *See, e.g., id*. at *5 (Leinenweber, J.) (observing that "courts applying the ICFA largely agree that sending unsolicited fax advertisements offends public policy"); *Able Home*, 2017 WL 2152429, at *4 (Dow, Jr., J.) (same); *Mussat, M.D., S.C., v. Power Liens, LLC*, No. 13-cv-7853, 2014 WL 3610991, at *3 (N.D. Ill. July 21, 2014) (Coleman, J.) (same); *Brodsky*, 2011 WL 529302, at *9 (Holderman, J.) (same). Thus, the practice challenged here satisfies the first *Robinson* factor.

---

statute or code can be used to demonstrate that it violates public policy. *Id.* Accordingly, we will consider Glen Ellyn's citation to the Illinois Criminal Code as part of our analysis of whether Akron's conduct is unfair under the ICFA.

13

With regard to the second *Robinson* factor, there is far less agreement. Some courts within this district have concluded that the practice of sending unsolicited fax advertisements satisfies the second *Robinson* factor, while others have not. *Compare R. Rudnick & Co. v. G.F. Protection, Inc.*, No. 08 C 1856, 2009 WL 112380, at *2 (N.D. Ill. Jan. 15, 2009) (Gottschall, J.) (concluding that unsolicited fax advertisements are oppressive) *with Stonecrafters*, 633 F. Supp. 2d at 616–17 (Kapala, J.) (finding that unsolicited fax advertisements are neither immoral, unethical, oppresive, nor unscrupulous). For example, in *R. Rudnick*, the court observed that sending unsolicited fax advertisements was oppressive "as the term is understood under the ICFA" because "[t]he recipients of unsolicited faxes have no way of preventing their reception before the fax is received, short of disconnecting their fax machine from the phone line. Nor do they have a remedy at hand after the fax is received." *R. Rudnick*, 2009 WL 112380, at *2. By contrast, in *Stonecrafters*, the court agreed that the sending of unsolicited fax advertisements deprives consumers of meaningful choice, but still concluded that the practice was not "immoral, unethical, oppressive, [or] unscrupulous," as those terms are ordinarily understood. *Stonecrafters*, 633 F. Supp. 2d at 616–17. The court explained:

> The improper use of one piece of paper, a small amount of toner, and a few seconds of an employee's time is not oppressive conduct, nor does it fit within the definitions of any of the other terms. Rather, sending an unsolicited fax is more akin to taking someone else's pen and notebook without their permission and writing some notes on one sheet of paper. Even though the owner of the supplies did not have a choice in the matter, and even though the improper use depletes a small amount of ink and one piece of notebook paper, this court would be hard pressed to conclude that this conduct is immoral, unethical, oppressive, or unscrupulous.

*Id*.

However, the growing consensus is that sending unsolicited fax advertisements is neither immoral, unethical, oppressive, nor unscrupulous. *See, e.g., A Custom Heating & Air*

14

*Conditioning, Inc.v. Kabbage, Inc.*, No. 16 C 2513, 2017 WL 261944, at *6 (N.D. Ill. June 16, 2017) (Leinenweber, J.); *Orrington*, 2017 WL 5569741, at *6 (St. Eve, J.); *Able Home*, 2017 WL 2152429, at *5 (Dow Jr., J); *Mussat*, 2014 WL 3610991, at *3 (Coleman, J.); *G.M. Sign*, 871 F. Supp. at 769–70 (Kendall, J.).

For the reasons set forth in those cases, the conduct at issue here does not satisfy the second *Robinson* factor. "[S]ending an unsolicited fax advertisement deprives consumers of a meaningful choice because they cannot avoid such faxes without turning off their fax machines." *Stonecrafters*, 633 F. Supp. 2d at 616 (internal quotations and citations ommitted). At the same time, sending one, single-page fax advertisement to each of forty or more recipients, as alleged here, is not "immoral, unethical, oppressive, or unscrupulous," as those terms are commonly understood. *See id*. at 616–17.

The third *Robinson* factor, like the second, has received varying treatment. "A practice causes substantial injury to consumers if it causes *significant* harm to the plaintiff and has the potential to cause injury to a large number of consumers." *Stonecrafters*, 633 F. Supp. 2d at 617 (internal citations and quotations omitted).

Although some courts conclude that this factor has been met in junk fax cases, others do not. *Compare Centerline Equip. Corp. v. Banner Personnel Serv., Inc.*, 545 F. Supp. 2d 768, 781 (N.D. Ill. Mar. 3, 2008) (concluding that the third *Robinson* factor had been met where plaintiff alleged that defendant had sent "mass broadcast[s] of faxes, and ha[d] sent such faxes to at least forty people in Illinois") (internal quotation and citation omitted) *with A Custom Heating*, 2017 WL 261944, at *6 (concluding that the third *Robinson* factor had not been met where defendant had sent a one-page fax to plaintiff).

However, here, too, there is a growing consensus that sending unsolicited faxes does not satisfy the third *Robinson* factor. *See, e.g. Kloudscript*, 2019 WL 6467319, at *5; *Orrington*, 2017 WL 5569741, at *6; *Able Home*, 2017 WL 2152429, at * 5; *Mussat*, 2014 WL 3610991, at *3. Courts considering this question typically analyze potential damages on both a plaintiff and class-wide basis since this factor requires courts to evaluate both harm to the named plaintiff and potential harm to a class of consumers. *See, e.g., A Custom Heating*, 2017 WL 2619144, at *6; *G.M. Sign*, 871 F. Supp. 2d at 770–71. Nevertheless, damages in junk fax cases often cannot satisfy this factor. *See, e.g., Kloudscript*, 2019 WL 6467319, at *5; A *Custom Heating*, 2017 WL 2619144, at *6. As the court explained in *Able Home*:

> Assuming a loss of 2 cents per page for each unauthorized 2-page fax, the class would have to consist of 2,5000 people before the alleged harm plausibly reaches even $100. Here, Plaintiff alleges "on information and belief that there are more than 40 members of the class"—or an aggregate harm of $1.60. By any standard, that is not a "substantial injury."

*Able Home*, 2017 WL 2152429, at * 5 (internal citations and quotations omitted). Here, because Glen Ellyn has alleged that a class of 40 people received a one-page fax, the potential damages may be even less than in *Able*. (FAC ¶¶ 9, 18.) Regardless of the precise calculation, nothing in Glen Ellyn's FAC suggests that Akron's unsolicited faxes caused "susbtantial injury." *See Able Home*, 2017 WL 2152429, at * 5. Accordingly, the allegations in Glen Ellyn's FAC do not satisfy the third *Robinson* factor.

Since the allegations in Glen Ellyn's FAC do not satisfy two of the three *Robinson* factors, Glen Ellyn has not properly alleged an unfair practice, and Glen Ellyn's ICFA claim is dismissed.

### V.  New York General Business Law Claim

Finally, we turn to Glen Ellyn's claim under New York General Business Law, § 396-aa, which makes it unlawful to send unsolicited fax-advertisements under certain circumstances and without opt-out provisions.

Akron asserts that Glen Ellyn cannot maintain this claim because it is a species of forum shopping; Glen Ellyn chose to bring its claims in Illinois and brought a number of claims under Illinois law. (MTD at 10–11.) According to Akron, Glen Ellyn should not be able to simultaneously bring a claim under New York law as well. (*Id.*) In response, Glen Ellyn argues that both New York and Illinois have an interest in prohibiting Akron's conduct; and thus, Glen Ellyn should be allowed to pursue claims under both states' laws. (FAC at 12–13.) We construe this dispute as concerning choice of law.

"Federal courts hearing state law claims under diversity or supplemental jurisdiction apply the forum state's choice of law rules to select the applicable state substantive law." *McCoy v. Iberdrola Renewables, Inc.*, 760 F.3d 674, 684 (7th Cir. 2014) (internal citations omitted). Since this court sits in Illinois, we will apply Illinois's choice of law rules. "Under Illinois choice-of-law rules, a conflict of law exists only where the application of one state's law over that of another state will make a difference in the outcome of a case, and where there is no conflict in the relevant state law, a court will apply Illinois law." *Perdue v. Hy-Vee, Inc.*, 455 F. Supp. 3d 749, 758 (C.D. Ill. Apr. 20, 2020) (internal citations omitted).

Illinois courts use the "most significant relationship" approach of the Restatement (Second) of Conflicts of Law to resolve choice of law questions. *Esser v. McIntyre*, 661 N.E. 2d 1138, 1141 (Ill. 1996). In applying this test, courts consider four factors: "(1) where the injury occurred; (2) where the injury-causing conduct occurred; (3) the domicile of the parties; and (4) where the relationship of the parties is centered." *Id*. "Generally, the law of the place of injury

17

controls unless some other jurisdiction has a more significant relationship with the occurrence and with the parties." *Perdue*, 455 F. Supp. 3d at 759 (citing *Esser*, 661 N.E. 2d at 1141).

Neither party addressed these factors in its briefing. However, given that the alleged injury occurred in Illinois, and Glen Ellyn has not argued that New York has a more significant relationship with the conduct at issue and the parties than Illinois, Illinois state law should govern these claims.

Illinois does not have a law that is precisely analogous to New York General Business Law § 396-aa, but Illinois does have ICFA and common law tort actions, which encompass similar subject matter. Additionally, the Supreme Court has "held that the 'Full Faith and Credit Clause does not compel a state to substitute the statutes of other states for its own statutes dealing with a subject matter concerning which it is competent to legislate.'" *Franchise Tax Bd. of Cal. v. Hyatt*, 538 U.S. 488, 494 (2003) (quoting *Sun Oil Co. v. Wortman*, 486 U.S. 717, 722 (1988) (internal citations and quotations omitted)). The State of Illinois is "competent to legislate" with respect to the conduct at issue here, which Glen Ellyn claims injured citizens of Illinois. The fact that Illinois has chosen not to enact a law analogous to New York General Business Law § 396-aa is significant. *See Franchise Tax Bd.*, 538 U.S. at 494–99. We will defer to Illinois's judgment and will not allow Glen Ellyn to pursue its New York General Business Law § 396-aa claim here.

Most of the authority that Glen Ellyn cites in support of its position that it should be able to pursue claims under multiple states' laws consists of out-of-circuit cases concerning the application of blue sky laws.[2] *See Fed. Housing Fin. Agency v. Nomura Holding Am., Inc.*, 873

---

[2] The remaining case that Glen Ellyn cites—*Totemoff v. State*, 905 P.2d 954 (Alas. 1995)—arises from a state prosecution for hunting with the aid of an artificial light, where a hunter was in navigable waters when he shot and killed a deer on federal land. *Id.* at 957. There are a few

F.3d 85, 100, 156 (2d Cir. 2017); *FDIC v. Countrywide Fin. Corp.*, 2:11-ML-02265, 2012 U.S. Dist. LEXIS 194330, *9 and n.3 (C.D. Cal., June 15, 2012); *Barnebey v. E. F. Hutton & Co.*, 715 F. Supp. 1512, 1534–36 (M.D. Fla. 1989); *Lintz v. Carey Manor Ltd.*, 613 F. Supp. 543, 550–51 (W.D. Va. 1985). In that line of cases, courts typically abandon choice-of-law principles in favor of a "territorial nexus" approach. *See, e.g., Barnebey*, 715 F. Supp. at 1534–36; *Lintz*, 613 F. Supp. at 550–51. Applying this approach, plaintiffs may pursue causes of action under multiple states' blue sky laws so long as they can demonstrate a sufficient nexus between the parties and the state law pleaded. *Id.* Glen Ellyn does not explain why these principles should be extended beyond securities law, except to say that both New York and Illinois have an interest in preventing the sending of unsolicited fax advertisements. (Opp. at 13.)

At least one other court within this circuit has declined to extend the above-referenced securities law principles to other areas of law. *See Hartman v. Meridian Fin. Services*, Nos. 01-C-60-C, 01-C-61-C, 01-C-88-C, 01-C-104-C, 01-C-254-C, 01-C-415-C, 01-C-416-C, 01-C-424-C, 2001 WL 1823617, at *3 (W. D. Wis. Aug. 28, 2001) (declining to adopt the territorial nexus approach for a debt collection case). We likewise decline to do so here. Glen Ellyn's New York General Business Law claim is dismissed.

## CONCLUSION

For the aforementioned reasons, Akron's motion to dismiss is denied with regard to Glen Ellyn's TCPA claim and granted with regard to Glen Ellyn's state law claims.

---

problems with this citation. First, it concerns the application of criminal, rather than civil, law. Second, the opinion focuses on whether federal law preempts state law and whether the state had jurisdiction over the crime—not whether a court can simultaneously apply two states' laws to the conduct at issue. *Id*. at 958–68. Third, the specific provision cited by Glen Ellyn, and the cases cited therein, address the question of whether multiple states can assert jurisdiction over a crime, not whether multiple states' laws can simultaneously be applied to the same crime. *Id*. at 961–62. Finally, *Totemoff* was issued by a court outside of this circuit and is not binding here.

                                                                                   *Marvin E. Aspen*
                                                                         Honorable Marvin E. Aspen
                                                                        United States District Judge

Dated: November 16, 2020
       Chicago, Illinois